**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OFER MIZRAHI DIAMONDS, INC., and OFER MIZRAHI, LTD. | ) ) ) Case No. 18-cv-04330 |
| Plaintiffs, | ) ) |
| | ) Judge Virginia M. Kendall |
| vs | ) ) Magistrate Young B. Kim |
| DAVID COHEN, | ) ) TRIAL BY JURY DEMANDED |
| Defendant. | ) ) ) |

**AMENDED COMPLAINT**

Plaintiffs, Ofer Mizrahi Diamonds, Inc. and Ofer Mizrahi, Ltd. referred to collectively as ("Ofer Mizrahi"), by their undersigned attorneys, for their Complaint against Defendant, David Cohen ("Cohen") allege as follows:

**NATURE OF THE CASE**

1.       This is a case for defamation *per se* arising from Cohen's false statements, published on the internet and through an international press release. Cohen, a diamond wholesaler, knowingly entered into a scheme with a group of allegedly dishonest lawyers to destroy Ofer Mizrahi's reputation. Cohen misrepresented that Ofer Mizrahi, who is also a diamond wholesaler: (a) altered a diamond and removed a serial number from it in order to conceal that the Gemological Institute of America ("GIA") reported that it had internal laser drilling; and (b) caused Cohen's wholesale diamond business to suffer a half a million dollars in lost reputation damages warranting a punitive damages award of at least $1,500,000 in a lawsuit Cohen filed against Ofer Mizrahi in the Circuit Court of Cook County in early 2018. Cohen knew that he had suffered no lost reputation damages, concocted that false damage claim which he repeated in his press release to inflict harm

Ofer Mizrahi's reputation out of spite because customers based on price and selection had decided to do business with Ofer Mizrahi and not Cohen. In fact, as Cohen's own customers have attested in sworn declarations, Cohen suffered no lost reputation damages. Cohen's representation about Ofer Mizrahi's removal of a serial number from a diamond was also false. Cohen had documents in his possession (certified diamond appraisal reports), when he published these defamatory representations, disproving them. If he had bothered to telephone Ofer Mizrahi himself or conduct a proper investigation before making his false claims, he would have learned that Ofer Mizrahi had sold the diamond with the serial number intact and with the GIA report accompanying it. He would have also learned that Ofer Mizrahi had sales records and other business records which proved these facts. Cohen instead joined forces with an attorney ("Cohen's Attorney") who is part of ring of lawyers who allegedly extort jewelers through defamatory internet smear campaigns. See *Diamond Consortium, Inc. v. Manookian*, 4:16CV94-ALM, 2017 WL 3301527, at *12 (E.D. Tex. Aug. 3, 2017) and Exhibits A-C. With the help of this lawyer, Cohen defamed Ofer Mizrahi on the internet to make it falsely appear that they engaged in ongoing diamond fraud and had a pattern and practice of knowingly selling intentionally laser drilled diamonds without disclosure. As Cohen knew and as third-party diamond appraisals and business records prove, none of this was true. The purpose of this lawsuit is to restore Ofer Mizrahi's good name and reputation.

## PARTIES

2.      Plaintiff, Ofer Mizrahi, Ltd. is an Israeli corporation with its principal place of business located at Ramat Gan, Israel. It is a diamond wholesaler.

3.      Plaintiff, Ofer Mizrahi Diamonds, Inc. is an Illinois corporation with its principal place of business in Cook County, located in Chicago, Illinois. It is a diamond wholesaler.

2

4.      Defendant David Cohen is a citizen of Virginia and a resident of Virginia Beach, Virginia. Cohen owns a diamond wholesale business, Zion Importing and Manufacturing ("Zion"), that purchased diamonds from Ofer Mizrahi both as direct purchases and on consignment. Cohen now operates two retail jewelry outlets that compete directly with his Zion's retail jewelry store customers.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiffs are subjects of a foreign state lawfully residing in different states from Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this district under 28 U.S.C. § 1391 because the acts complaint occurred here including that Cohen's Attorney and agent published the defamatory statements here on Cohen's behalf as part of Cohen pursuing a lawsuit against Ofer Mizrahi in the Circuit Court of Cook County. Ofer Mizrahi's United States operations are headquartered in Chicago, Illinois and Cohen targeted Illinois as the situs for harming Ofer Mizrahi and causing customers not to do business with it here.

## FACTUAL ALLEGATIONS

7.      Cohen filed a purported fraud and consumer lawsuit against Ofer Mizrahi in the Circuit Court of Cook County, Illinois regarding the purchase of a diamond from Ofer Mizrahi that the GIA reported had been internally laser drilled.

8.      Immediately after filing the Complaint in the Cook County lawsuit, Cohen issued a false and defamatory press release about the suit. He then published the Complaint, which contained material false allegations on the internet, in order to try to extort an exorbitant settlement and to harm Ofer Mizrahi's reputation to extract revenge for losing business to them. He acted out

of spite because some of Cohen's wholesale customers, who were retail jewelers, had started doing business elsewhere due to price and selection issues and because Cohen had opened competing retail outlets. Some of these jewelers had cut-out Cohen as the middle man and were doing business directly with Ofer Mizrahi.

9. Cohen was in desperate straights because his wholesale business had collapsed and was losing tens of thousands of dollars due price and selection issues and his poor business practices. He therefore joined forces with an attorney, who is part of ring of lawyers who allegedly extort jewelers through internet smear campaigns to enrich themselves to the tune of millions of dollars.

10. The attorney leader of this alleged ring is currently being prosecuted for alleged criminal extortion by the Board of Professional Responsibility of the Supreme Court of Tennessee. See Exhibit B. Cohen's Attorney is a defendant in a pending RICO suit for being part of the alleged extortion ring. *Diamond Consortium, Inc. v. Manookian*, 4:16CV94-ALM, 2017 WL 3301527, at *12 (E.D. Tex. Aug. 3, 2017) and Exhibit A hereto.

11. Cohen's Attorney and his co-conspirators allegedly use the lawsuits they file as the jumping off point to begin defamatory smear campaigns against the jewelers' businesses. After attacking the jewelers, they then solicit the jewelers to: (a) enter into attorney/client "consulting" contracts with Cohen's Attorney's co-conspirator for millions of dollars; and (b) settle the lawsuits filed by Cohen's Attorney against the jewelers so Cohen's Attorney can earn contingency fees. *Id.* and Exhibits A-B.

12. The 5th Circuit Federal Court of Appeals described the alleged scheme as follows:

[T]he gravamen of Diamond Consortium's civil conspiracy allegations against Hammervold concern "[t]he extortion scheme and false attack campaign perpetrated by Manookian ... Hammervold ... [and] Hammervold, PLC ... [which] constitute[d] a civil conspiracy under Texas law." The claim goes on to contend that

4

> "Manookian ... Hammervold ... and Hammervold, PLC ... agreed and conspired to smear the business names and ownership of various jewelry retailers across the country."

*Diamond Consortium, Inc. v. Hammervold*, 17-40582, 2018 WL 2077910, at *7 (5th Cir. May 3, 2018), reh'g denied (June 12, 2018)

13.     Cohen's Attorney's documented history of alleged misconduct was the reason the 5th Circuit later precluded him from representing himself or his law firm *pro se* in the pending RICO case for alleged criminal extortion and smearing jeweler's reputations. The 5th Circuit stated in relevant part:

> That Diamond Doctor had to file the underlying [RICO] lawsuit to protect its business interest and stop Hammervold's exploitation of its client base is evidence enough of Hammervold's motive to gain access to the sensitive documents. Hammervold's attempt to make himself counsel of record is forbidden "obstructionist misconduct." Exhibit C.

14.     With his attorney's assistance, Cohen employed some of these same tactics at the start of his Cook County Circuit Court case. Immediately after filing the false Complaint in that case, Cohen published the Complaint on the internet. Cohen also published his false attacks on his attorney's website and disseminated a defamatory press release regarding the lawsuit throughout the country and internationally; the press release was eventually picked up by both national and international media outlets. Exhibits D-E.

15.     Cohen published the following false and defamatory statement on the internet: "The lawsuit details Ofer Mizrahi's flouting of diamond industry norms and fraudulent sale of a laser-drilled diamond." Exhibit D.  The Complaint, published by Cohen on the internet and outside the confines of the lawsuit, falsely states that Ofer Mizrahi resold an internally laser drilled diamond after erasing the GIA serial number and without supplying the GIA report disclosing the internal laser drilling. In fact, Ofer Mizrahi resold the diamond with serial number intact accompanied by the GIA report disclosing the internal laser drilling. The Complaint, published by Cohen on the internet and outside the confines of the lawsuit, also falsely represented that Cohen suffered at

least half a million dollars in lost reputation damages due to Ofer Mizrahi's claimed fraud. This false claim was intended to transform what at best was a $9,000 contract dispute between sophisticated diamond wholesalers into a purported international multi-million dollar diamond fraud thus justifying a claim for in excess of $1.5 million in punitive damages. Cohen employed these grossly inflated and false actual and punitive damages figures solely for the purpose of smearing Ofer Mizrahi's reputation and making it seem as if they were engaged in a massive fraud. In fact, there were no lost reputation damages and thus there could not possibly be punitive damages of anything more than a few thousand dollars and certainly not the $1.5 million falsely represented by Cohen.

16. The press release Cohen issued continued the smear campaign with more detailed false and defamatory accusations that Cohen invented to extort a settlement and harm Ofer Mizrahi's reputation out of spite and the anger that his is wholesale business had already collapsed (due to his poor business practices, high prices and lousy diamond selection). Contrary to his false claims, Cohen's wholesale business was losing tens of thousands of dollars and suffered no damages of loss of reputation due to the alleged fraud. The press release contains the following false and defamatory statements (whose the documents purportedly relied upon themselves contradict):

> One of the exhibits [to the Complaint] shows that after receiving the diamond back, Ofer Mizrahi had the diamond re-graded by EGL Hong Kong, even though it had already been graded and identified as laser-drilled by the GIA. The lawsuit alleges that the "only reason [Ofer Mizrahi] would procure an EGL HK certificate, when the Diamond had already been definitively graded and certified by the GIA (the most reputable lab in the industry), would be to have a certificate that fraudulently overstated the qualities of the diamond, and did not reveal the laser-drilling treatment." …

> The lawsuit alleges that Ofer Mizrahi's "misconduct was not isolated, but part of an ongoing and systemic pattern of unfair, deceptive, and fraudulent sales practices." [Plaintiff] is seeking $500,000 in compensatory damages and $1,500,000 in trebled and punitive damages. (Exhibit E).

The press release also repeats the Complaint's false statements, published by Cohen on the internet outside the confines of the lawsuit, stating that Cohen's' business reputation was harmed. *Id.* Cohen advanced this lost reputation damage claim to inflate the size of the claimed fraud from just over $9,000 to half a million dollars in order to cause substantial reputational harm to Ofer Mizrahi.

17.     As shown by his businesses' tax returns and sales records, the business called Zion Importing and Manufacturing ("Zion") was in fact losing tens of thousands of dollars a year before there could have been any impact from the alleged fraud and its sales with the retailer who purchased the diamond at issue had been plummeting for years due to price and selection issues. Zion's own records thus prove Cohen suffered no harm as a result of the transaction. Further, Long Jewelers, the retailer to whom Zion and Cohen sold the internally laser drilled diamond, has attested in sworn testimony that it had already decided to start buying elsewhere due to price, selection, and other issues having nothing to do with Long Jewelers purchase of the internally laser drilled diamond. See Exhibits F-G.

18.     Long Jewelers continues to buy diamonds from Ofer Mizrahi. It has attested that neither Cohen nor Ofer Mizrahi acted improperly or fraudulently. *Id.* David Long, one of the owners of Long Jewelers, attested in his sworn declaration: "Long [Jewelers] understands that internal laser drilling can at times be hard to spot and that the fissures created by the heat of the internal drilling process can appear to be or can be confused with natural fissures".  Exhibit F, at § 4. He further attested, why there was no fraud, no harm to the consumer, and in his eyes no loss of reputation to Cohen or Ofer Mizrahi. *Id.* §§ 4-7.

19.     Long Jewelers continues to buy diamonds from Ofer Mizrahi and contrary to Cohen's defamatory publications, did not stop buying diamonds from Cohen or Zion as a result of Cohen's involvement in the internally laser drilled diamond wholesale transaction. *Id.* There was

no loss or harm to Cohen or Zion's reputation as Cohen's defamatory publications falsely represented in order to smear Ofer Mizrahi's reputation. *Id.*

20.    Long attested in his declaration[1]:

For a number of years, Long 1 purchased diamonds wholesale from Zion Importing and Manufacturing ("Zion"). Well before learning about the Gemological Institute of America ("GIA") report for a diamond with the EGL number OXT22770 (hereinafter referred to as "OXT22770") as described below, Long 1 decided that it did not want to continue purchasing a substantial amount of diamonds from Zion due to price and selection issues. Long 1 therefore began purchasing its diamonds from other wholesalers including Ofer Mizrahi Diamonds Inc. Long 1 began purchasing wholesale diamonds from Ofer Mizrahi Diamonds Inc. and other wholesalers in or about 2014 after it joined rap.net. Long 1 has purchased a substantial number of diamonds from Ofer Mizrahi Diamonds Inc. during the period 2014 to the present. Long 1 continues to purchase diamonds from Ofer Mizrahi Inc. through the present.

After joining rap.net and gaining access to better selection and pricing from other wholesalers including Ofer Mizrahi Diamonds, Inc., Long 1's purchases of diamonds from Zion dropped as follows: 2014, approximately $184,000 in purchases; 2015, approximately $124,000 in purchases; 2016, approximately $65,000 in purchases; January 2017 to May 2017, $0 in purchases.

Long 1's decision to purchase or not to purchase diamonds from Zion was not impacted by Zion's involvement in and sale to Long 2 of OXT22770 which the GIA later reported, after that purchase, had internal laser drilling. Long 2 understands that internal laser drilling can at times be hard to spot and that the fissures created by the heat of the internal drilling process can appear to be or can be confused with natural fissures. Long 1, Long 2 and I do not consider Zion's involvement in selling OXT22770 to Long 2 to have resulted in us believing that Zion or Cohen were involved in dishonest or disreputable sales practices of intentionally selling an internally laser drilled diamond or in the incompetent sales practice of failing to uncover or disclose that the diamond had internal laser drilling according to the GIA. We do not consider Zion or David Cohen to be disreputable, dishonest or incompetent diamond wholesalers who either concealed or failed to identify that OXT22770 was internally laser drilled.

At all relevant times, Long 1, Long 2 and I knew that Zion had purchased OXT22770 from Ofer Mizrahi Diamonds, Inc. or one its affiliates. Long 1 and 2 do not hold Ofer Mizrahi Diamond's Inc. or its affiliates in lower regard due to their involvement in the sale of OXT22770 to Zion. Long 1 has continued to do substantial business with Ofer Mizrahi Diamonds, Inc. after we learned that OXT22770 according to a GIA report had internal laser drilling. I was involved in returning OXT22770 to Ofer Mizrahi Diamonds, Inc. or one of its affiliates in return for it reimbursing to Long 2 all of the monies it had received

---

[1]    In Long's declaration, Long Jewelers locations are referred to as "Long 1 and Long 2".

from Zion for OXT22770. Long 1 increased its purchases from Ofer Mizrahi Diamonds Inc. after learning about the GIA report relating to OXT22770. Long 2 also purchases diamonds from Ofer Mizrahi Diamonds Inc. and continues to do so.

Neither I nor Long 1 or myself on behalf of Long 2 or 3 have criticized Zion or David Cohen to anyone including any Virginia area jeweler for selling Long 2 a diamond that the GIA reported was internally laser drilled; nor do we hold David Cohen or Zion in lower regard due to their involvement in the sale to Long 2 of OXT22770.

Long 2 and I simply expected Zion and/or Cohen to help Long 2 make the customer, who had purchased OXT22770 from Long 2, whole by reimbursing to Long 2 the margin that Zion earned on that diamond so that both of the wholesalers associated with the sale (Zion and Ofer Mizrahi Diamonds, Inc. or one of its affiliates) would contribute toward making the customer whole. Cohen and Zion declined to do that despite that Long 2 made the customer whole with the assistance of Ofer Mizrahi Diamonds, Inc. and/or one of its affiliates.

I am aware based on my discussions with Jim McEwen that Long 2 returned to the customer the entire purchase price in exchange for the customer returning the diamond.

*Id.* at §§ 4-7.

## Defamation *Per Se*

21.     Plaintiffs repeat and reallege paragraphs 1-20 herein.

22.     Cohen's statements as alleged herein are false and defamatory *per se* as they pertain to Ofer Mizrahi and impute the commission of criminally fraudulent acts and want of integrity in their profession as diamond wholesalers.

23.     Cohen published defamatory statements to third parties without privilege and outside the confines of the Cook County lawsuit.

24.     As a proximate result of Cohen's defamatory statements, Ofer Mizrahi have suffered and will continue to suffer harm to their reputation in the community and other presumed and general damages in amount in excess of $2,000,000 as to each Plaintiff.

25.     Cohen knew or should have known that his statements were false when he made them or he acted with reckless disregard for whether the statements were true or false.

9

26.     Cohen acted with malice in a willful and wanton manner. Accordingly, each Plaintiff is entitled to an award of at least $6,000,000. in punitive damages.

## DEMAND FOR JURY TRIAL

27.     Pursuant to Federal Rule of Civil Procedure 38(b), Ofer Mizrahi request a trial by jury.

WHEREFORE, Plaintiffs, Ofer Mizrahi, Ltd., and Ofer Mizrahi Diamonds, Inc., requests that this Court enter judgment in their favor and against Defendant David Cohen as follows:

(A)     Award each Plaintiff separately actual damages in an amount in excess of $2,000,000;

(B)     Award each Plaintiff separately punitive damages in an amount in excess of $6,000,000;

(C)     Award costs;

10

(D)     Enjoin Defendant and all persons in consort with him permanently from

repeating the defamatory statements to third-parties; and

(E)     Any further relief this Court deems just.

OFER MIZRAHI DIAMONDS, INC., and
OFER MIZRAHI LTD.

By: _____
        One of their attorneys

Peter S. Lubin
Patrick Austermuehle
Andrew C. Murphy
DITOMMASO LUBIN AUSTERMUEHLE, P.C.
17 W 220 22nd Street – Suite 410
Oakbrook Terrace, IL 60181
(630) 333-0000
psl@ditommasolaw.com
paustermuehle@ditommasolaw.com
acm@ditommasolaw.com
eservice@ditommasolaw.com

11